[Civ. No. 22168.  Second Dist., Div. One.  May 8, 1957.]

STATE OF CALIFORNIA, SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and RAYMOND BALDES et al., Respondents.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, and Arthur L. Martin, Deputy Attorney General, for Petitioner.

Everett A. Corten and Edward A. Sarkisian for Respondents.

DORAN, J.—The record discloses that on November 6, 1953, Raymond Baldes while employed as a maintenance mechanic for Bethlehem Pacific Coast Steel Corporation, suffered an industrial injury to his right eye resulting in industrial blindness in such eye. There had been a previous industrial injury on October 1, 1953.

The employee's application for hearing against the Subsequent Injuries Fund on December 28, 1954, states, "That prior to the industrial injuries involved herein, applicant was permanently and partially disabled with a mental disease, described as follows: Psychotic depressive reaction manifested by depression, psychomotor retardation, anxiety, worry, transient hallucinations, and delusions, feelings of helplessness, and inability to cope with difficulties, in partial remission."

In the course of the proceedings, the Subsequent Injuries Fund being a party thereto, the commission finally found in its decision after reconsideration, that the employee's combined disability resulting from the industrial injury of November 6, 1953, and the prior permanent disability, amounted to 79 per cent of total disability. The Subsequent Injuries Fund was held liable for the difference between the 46 per cent rating for the industrial disability and the 79 per cent total combined disability rating, or a liability for 132 weeks at the rate of $30 per week, and thereafter a life pension of $8.77 per week.

The Subsequent Injuries Fund, seeking a writ of review, alleges (1) "That the respondent commission acted without and/or in excess of its jurisdiction. 2. That the Decision was unreasonable. 3. That the Findings of Fact do not support the Decision or Award. 4. That the Decision and Award against the . . . Subsequent Injuries Fund was not supported by substantial evidence." The petitioner seeks to have the Decision and Award annulled. This position is predicated upon the theory that "Raymond Baldes' mental condition was asymptomatic prior to the industrial injury of November 6, 1953 (and unknown to the employer) and therefore improperly used as a basis for an award against the Subsequent Injuries Fund."

In *State of California, Subsequent Injuries Fund* v. *Industrial Acc. Com.*, 135 Cal.App.2d 544 [288 P.2d 31], the reviewing court said: "In construing section 4663, Labor Code (the basic law of apportionment) it has been held, in effect that if the commission finds that the preexisting disease or condition was 'disabling' (that is, symptomatic and interferes with the employee's ability to work) then an apportionment between the prior disability and the resultant disability due to the subsequent injury would be made. (See *Subsequent Injuries Fund* v. *Industrial Acc. Com.*, 39 Cal.2d 83 [244 P.2d 889]."

This was followed by *Urquiza* v. *Industrial Acc. Com.*, 144 Cal.App.2d 322 [300 P.2d 871] (Sept. 5, 1956) the same court stated: "We affirm the statement made in that (Strauss) case (p. 553): 'We conclude that section 4751, Labor Code, was not intended to apply to asymptomatic disease processes which were unknown to both employee and employer and which in nowise interfered with the employee's ability to work.' " The proceeding was therefore remanded to the commission to determine whether or not the employer had such knowledge of the employee's preexisting disability, and

if so, the degree of disability caused by the combination, etc.

The same principle was followed in *State of California, Subsequent Injuries Fund* v. *Industrial Acc. Com.*, 147 Cal. App.2d 818 [306 P.2d 64] (Jan. 25, 1957), and the reviewing court there said: "Did the employer know (or should have known) as a reasonable person of the preexisting arthritic processes? The kind of physical impairment the Legislature had in mind was one of which the employer had knowledge since the statute was designed to encourage the employment of partially disabled people and an obscure disability unknown to the employer would present no handicap to employment."

In the instant case the record leaves no room for doubt that the employee had a serious mental condition preexisting the industrial injury. During Navy service, Mr. Baldes had been hospitalized for neuropsychiatric survey, and had been rated by the Veterans Administration as having incurred his mental illness while in the Armed Forces." However, the employee apparently experienced no difficulty in respect to the employer's work, although there was medical evidence to the effect that "applicant was somewhat disabled from work before Nov. 1953, by reason of his personality disorder." There is apparently no evidence touching upon the question of the employer's knowledge of the previous disability.

The difficulty then, is similar to that encountered in the Urquiza case previously cited, where the court said: "The commission should have determined whether or not Smith (employer) had such knowledge. While the record on the subject is confusing, the commission could have required the confusion to be cleared up or could have found against petitioner for failure of proof. However, the commission gave no consideration to this matter. . . ."

In view of the recent cases cited, there can be no doubt as to the rule which should be applied, and that the Subsequent Injuries Fund would only be liable in those cases where the preexisting injury was known or would have been known to the employer. In this connection it may be noted that the employee in the Urquiza case had suffered an eye injury as in the present situation and had a preexisting mental disability.

The order is therefore annulled and the proceeding remanded to the respondent commission for further proceedings not inconsistent with the views expressed herein.

White, P. J., and Fourt, J., concurred.